# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Michael Ayala, | ) | |
|     Plaintiff, | ) | Case No: 13 C 4425 |
| | ) | |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| Chicago Police Officer Rosales, et al., | ) | |
|     Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Plaintiff's motion for a new trial [127] is denied.

## STATEMENT

Plaintiff filed a lawsuit alleging false arrest, excessive force and failure to intervene against several Chicago Police Officers related to his arrest on May 8, 2012. After a trial, the jury returned a verdict in favor of the defendants. Plaintiff moves for a new trial under Federal Rule of Civil Procedure 59(a), asserting several bases for relief. The Court assumes knowledge of the general facts of the case.

Standard of Review

Under Rule 59(a), a "court may only order a new trial if the jury's verdict is against the manifest weight of the evidence, . . . or if for other reasons the trial was not fair to the moving party." *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) (citation omitted). In instances where the issue is whether the Court erred by admitting or excluding evidence, the conclusion "turns on an analysis of the evidentiary ruling in the context of the entire trial record." *Barber v. City of Chi.*, 725 F.3d 702, 705 (7th Cir. 2013) (internal quotation marks and citation omitted). District courts have wide discretion in determining whether to grant a motion for a new trial, *Mejia v. Cook Cnty., Ill.*, 650 F.3d 631, 634 (7th Cir. 2011), and the Court's evidentiary rulings are given particular

deference. *See Jordan v. Binns*, 712 F.3d 1123, 1137 (7th Cir. 2013) (evidentiary rulings are reviewed for an abuse of discretion).

Before addressing Plaintiff's claims, the Court notes that he failed to provide relevant portions of the transcript in support of certain assertions of error. Defendants have provided some transcript excerpts in support of their opposition to the motion for a new trial, but Plaintiff's failure to provide all of the necessary record citations makes it impossible for this Court to properly address his claims of error. *Parr v. Nicholls State Univ.*, No. CIV.A. 09-3576, 2012 WL 1032905, at *3 (E.D. La. Mar. 27, 2012) (on a motion for a new trial, noting that "without the benefit of citation to the trial transcript, the Court has no basis for determining that any error occurred"). Thus, while the Court has attempted to the best of its ability to address Plaintiff's claims on the merits in the analysis that follows, any arguments lacking necessary record support are, in the first instance, denied as waived. *Ratliff v. City of Chi.*, No. 10-CV-739, 2013 WL 3388745, at *1 (N.D. Ill. July 8, 2013) (in addressing motion for new trial, stating that "to the extent that citation to the record would be necessary to support a position, Defendants' failure to cite to the trial record or the pretrial conference record will not be excused"). *See also Hicks v. Avery Drei, LLC*, 654 F.3d 739, 744 (7th Cir. 2011) (in challenging evidentiary admissions in lower court, failure to cite to transcripts results in forfeiture).

<u>Prior Arrest and Lawsuit</u>

Plaintiff first argues that the Court improperly granted the defendants' eighth motion in limine, restricting Plaintiff from offering testimony regarding his prior civil rights lawsuit against other Eighth District police officers. Plaintiff contends that the defendants' argument that allowing such testimony would essentially insert a *Monell* claim into the case without

2

Plaintiff having pled one was a "red herring." But the Court did not grant the motion based on the concern of creating a *Monell* claim; rather, the Court stated:

> THE COURT: . . . Well, here's my ruling. I'm trying to balance the probative value of all of this evidence as to prior relationship between the parties in this case against the rather strong likelihood in this particular case, given all the facts that have been thrown around here, that if we allow all of this in, this will be a case that will be tried based upon what happened ten months ago and a lot of irrelevant and barely relevant evidence and not about the issues that are at the core of the case before me at this time.
>
> Plaintiff can elicit however it wants, through his own testimony or cross-examination of officers or whatever means within the rules of evidence, that the plaintiff was previously arrested by officers of this same district; that he was charged, that he filed a lawsuit against them; and, that the lawsuit was settled. That's all.

(Defs.' Resp., Ex. A, Dkt. # 132-1, at 41.) After some further discussion, the Court amended its ruling, stating that no testimony regarding the results of the prior lawsuit would be allowed. (*Id*. at 43.)

Plaintiff acknowledges that he was permitted to offer testimony that he had been previously arrested and criminally charged, he prevailed at trial on the criminal charges against him, and he filed a civil rights lawsuit against those officers.[1] He then conclusorily asserts that "he was denied the opportunity to fully explore his theory of the case and delve into what occurred in that [prior] matter for several reasons[,] including his state of mind and manner in which he acted, the Defendant Officers['] actions and the Defendant Officer's [sic] credibility regarding their knowledge" of Plaintiff. (Pl.'s Mot. New Trial, Dkt. # 127, at 4.)

Plaintiff, however, fails to specify how this led to the denial of a fair trial. Indeed, the

---

[1] However, as defendants note in their response, Plaintiff's counsel does not appear to have elicited testimony from Plaintiff regarding the civil rights lawsuit he filed related to his August 2011 arrest.

3

Court notes that it expressly stated at the pretrial conference that "[P]laintiff can argue that these officers must have known [of Plaintiff and the prior civil rights lawsuit] because they're from the same district" and thus had motive to arrest Plaintiff without probable cause and use excessive force during the May 8, 2012 arrest, and "[t]he officers can argue they didn't know." (Defs.' Resp., Ex. A, Dkt. # 132-1, at 43.) Plaintiff was permitted to ask the defendants at trial whether they knew other officers in the Eighth District. Plaintiff does not attach a transcript of his closing argument nor can the Court recall with any specificity the content of that argument. Nevertheless, the Court permitted Plaintiff to argue that the officers who conducted the arrest at issue must have known him and that he had filed a civil rights lawsuit against officers in the Eighth District.

Accordingly, the Court denies this basis for relief.

<u>Defendants' Knowledge of Plaintiff from Publicity Regarding Prior Arrest and Lawsuit</u>

At the pretrial conference, the Court stated that:

> [I]f the officers deny that they knew the plaintiff, [he] can bring out any direct evidence of knowledge, such as statements made the day after or during the event by these officers that would indicate that they knew who the plaintiff was. No evidence as to . . . press conferences, YouTube, speeches by the superintendent of police, or anything else [will be permitted].

(*Id*. at 41-42.)

Plaintiff argues that it was improper for the Court to bar him from questioning the defendants about the publicity that his prior arrest and civil rights lawsuit received because it precluded him from challenging the defendants' testimony that they did not know who Plaintiff was when they arrested him. According to Plaintiff, he had a right to impeach the defendants with evidence of the media coverage of the prior arrest and contends that "the fact that the

4

Plaintiff was deprived of this essential opportunity to adequately cross examine Defendants was an abuse of discretion . . . depriving [Plaintiff] of a substantial right." (Pl.'s Reply, Dkt. # 140, at 5.)

As indicated in the portion of the final pretrial conference quoted above, the Court denied Plaintiff's request to elicit testimony as to the defendants' knowledge of the publicity on the ground that its probative value was substantially outweighed by the concern regarding irrelevant satellite litigation and that the jury would improperly decide the case based on facts that occurred ten months before the arrest at issue. At a sidebar during the trial, Plaintiff's counsel again argued that he wanted to elicit testimony from Plaintiff that he had taken a video of the prior arrest, posted it on YouTube and was subsequently contacted by numerous television stations, which broadcasted the news. (Defs.' Resp., Ex. B, Dkt. # 132-2, at 38.) The Court reiterated that it had already decided the issue and stated that "[i]t's clear that if we go into this line of inquiry, we're going to end up retrying the excessive force case that [Plaintiff] filed before this and having all sorts of testimony about what was seen on the video, what could have been seen on the video, [and] who did what to whom." (*Id*. at 40.)

While arguing that the publicity evidence had probative value and his inability to question the officers about it denied him a substantial right, Plaintiff wholly fails to address the Court's countervailing concern that the probative value was substantially outweighed by the danger of distracting and misleading the jury with irrelevant information and needlessly prolonging the trial were the evidence admitted. The Court finds no basis on which to conclude that its balancing of the probative value with concerns of wasting time and misleading the jury under Federal Rule of Evidence 403 was in error.

Plaintiff asserts at length that he was prejudiced by the Court's ruling excluding the publicity evidence because he was not allowed to testify that on the night of the incident, "he drew a correlation between the 8th District officer calling him out by name and the negative publicity he had brought to the officer's intra-district colleagues [with respect to his prior arrest], compelling him to flee." (Pl.'s Mot. New Trial, Dkt. # 127, at 7-8.) In other words, Plaintiff asserts that he ran away from the defendant officers in this case because he feared that they were angry with him for having posted on social media videos and/or comments related to his prior arrest that may have placed other Eighth District Officers in a negative light. According to Plaintiff, this testimony was in direct contradiction to the defendants' testimony that they did not know Plaintiff and he simply took off running when they arrived at the scene. But Plaintiff overstates the restriction on his testimony. Plaintiff was allowed to testify about his prior arrest, and acknowledges that he "adequately proved up his theory according to this Honorable Court's parameters as to potentially why the Defendants in his case would retaliate against him because of the previous incident." (Pl.'s Reply, Dkt. # 140, at 6.) Moreover, the Court ordered that he could disclose he had brought a civil rights action against Eighth District officers based on the prior arrest, but that testimony does not seem to have been elicited.

As to the need to introduce the publicity evidence to show Plaintiff's state of mind,[2] the Court ruled that:

---

[2] As an aside, it is not clear why Plaintiff's state of mind during the time of the arrest is relevant in and of itself to the excessive force claim. As Plaintiff recognizes, he was able to elicit testimony and argue why the defendants in this case might be motivated to retaliate against him. Indeed, Plaintiff testified that he was "terrified" based on a prior "negative" incident with Eighth District police officers. Beyond making this point, however, which Plaintiff was allowed to do, Plaintiff fails to demonstrate that his state of mind affected the amount of force used by the defendants.

> All the jury needs to know for an explanation [as to why Plaintiff ran when the officers arrived] is that he had had prior contact with the police and, because of that, he didn't want to be there. You don't have to elicit the fact that the prior contact included YouTube, press conferences, . . . the superintendent of police going on TV, or any of those things. All you need to establish is that there was contact between your client and the police on the prior occasion and that's how they knew his name and . . . that's why he got up and headed for the door as soon as he saw police officers.

(Defs.' Resp. Mot. New Trial, Ex. A, Dkt. # 132-1, at 29.) The evidence Plaintiff was permitted to introduce allowed him to sufficiently set forth his theory of the case without adding extraneous information that would mislead and confuse the jury and unnecessarily extend the duration of the trial.

Moreover, "[a] new trial is warranted only if the error has a substantial and injurious effect or influence on the determination of a jury, and the result is inconsistent with substantial justice." *CERAbio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 994 (7th Cir. 2005) (internal citation omitted). "Evidentiary errors satisfy this standard only when a significant chance exists that they affected the outcome of the trial." *EEOC v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422, 440 (7th Cir. 2012). Even assuming the Court erred, Plaintiff has not demonstrated that the failure to include evidence of the amount of publicity regarding his prior arrest and lawsuit affected the outcome of the trial. The Court's pretrial ruling permitted Plaintiff to argue that the Eighth District officers involved in the arrest at issue must have known of Plaintiff's prior arrest and lawsuit against other Eighth District officers and therefore had motive to improperly arrest him and use excessive force. Indeed, Plaintiff states in his motion for a new trial that Mersed Villa, a witness at the scene of the arrest at issue, "testified the officers were clearly there for Michael and knew him." (Pl.'s Mot. New Trial, Dkt. # 127, at 8.)

For these reasons, the Court finds that it did not err in excluding evidence of any

publicity or social media surrounding Plaintiff's August 2011 arrest and civil rights lawsuit.

Motion for Mistrial

Plaintiff next contends that his motion for a mistrial was improperly denied. The Court ruled pretrial that the defendants could elicit only certain testimony regarding an incident, subsequent to the arrest at issue, between them and Plaintiff at a bar called Mad Anthony's. Specifically, the Court ruled that the defendants could testify that they responded to a call from Mad Anthony's, Plaintiff was there when the officers arrived, and Plaintiff accepted the defendants' offer of a ride home. The defendants were not allowed to elicit testimony regarding the nature of the call to the police or that a bouncer wanted Plaintiff removed from the bar. (Defs.' Resp. Mot. New Trial, Ex. A, Dkt. #132-1, at 21.)

Plaintiff does not supply a copy of the relevant portion of the transcript, but apparently defendant Officer Awadullah testified that he received a call of a disturbance at a bar and upon arrival, found Plaintiff in handcuffs with a member of the bar's security personnel. Plaintiff contends that Awadullah's testimony prejudiced him because it implied that he had engaged in criminal conduct or wrongdoing of some nature. Plaintiff further argues that despite his first objection to Awadullah's testimony regarding the nature of the call to the police (*i.e.*, a disturbance), Awadullah then went on and intentionally violated the Court's in limine ruling regarding the proper scope of the testimony by stating that Plaintiff was in handcuffs when Awadullah arrived at the bar. According to Plaintiff, the Court sustained the second objection to the handcuffs testimony and called a recess to warn the defendant about the proper scope of his testimony. At some point, Plaintiff asked for a mistrial, which the Court denied.

The lack of the relevant portion of the transcript seriously hampers this Court's ability to

8

address Plaintiff's argument. Plaintiff makes reference to "this Honorable Court's instruction [to the jury]," which presumably told the jury to disregard Awadullah's prohibited testimony. "[J]urors are presumed to follow limiting and curative instructions unless the matter improperly before them is so powerfully incriminating that they cannot reasonably be expected to put it out of their minds." *United States v. Danford*, 435 F.3d 682, 687 (7th Cir. 2006) (citation and internal quotation marks omitted). Plaintiff asserts that once the jury heard the evidence, a curative instruction was insufficient as the damage could not be undone. Again, without a transcript, the Court has no way to analyze his testimony or determine whether the references to a call to the police regarding a disturbance at the bar and the Plaintiff being in handcuffs were so prejudicial that a curative instruction would have been ineffective. Based on the information provided to it, the Court does not find that the reference to a police call regarding a disturbance and Plaintiff being in handcuffs upon the officers' arrival at the bar is so prejudicial or incriminating that the jury could not be expected to put it out of their minds.

This is particularly so since presumably Officer Awadullah testified that Plaintiff was not arrested and he and Officer Carrillo gave Plaintiff a ride home, thus weakening Plaintiff's assertion of prejudice. Moreover, this subsequent incident was probative because it established an interaction between Plaintiff and the police officers he claims were involved in a vendetta against him in which the officers, though provided with an opportunity to do so, did not abuse or in any way mistreat him - just the opposite. This tended to rebut the alleged ill will Plaintiff claimed was the motive for the use of excessive force. Thus, the evidence was important to the defense. In addition, it was during his ride home in the squad car that Plaintiff made statements to the officers which were also important to the defense. The limiting instruction was intended

9

to eliminate the possible prejudice to Plaintiff that might flow from evidence that he was involved in yet another physical altercation while drinking - the reason the police were called to the bar. Even though there was testimony about Plaintiff already being in handcuffs when the officers arrived at the scene, there was no testimony, as best the Court can recall, about the violent altercation Plaintiff was involved in while drinking at the bar. Thus, the main source of possible prejudice was avoided.

In addition, the Court notes that, as discussed above, Plaintiff himself sought to and did elicit testimony regarding his August 2011 arrest prior to the May 2012 arrest at issue in the instant case. Thus, the jury was already aware that Plaintiff was no stranger to trouble. Plaintiff fails to explain why evidence of his prior arrest was not prejudicial, but testimony that, subsequent to the incident at issue in this case, Plaintiff was in handcuffs at a bar but was not arrested and was driven home by the defendant officers was so prejudicial as to warrant a mistrial.

For these reasons, the Court denies this basis for a new trial.

Jury Instruction in Response to Jury Question

"To win a new trial based on an erroneous jury instruction, the [movant] must show both that the instructions did not adequately state the law and that the error was prejudicial to [him] because the jury was likely to be confused or misled." *Boyd v. Ill. State Police*, 384 F.3d 888, 894 (7th Cir. 2004). During deliberations, the jury sent a note to the Court with the following two questions:

> 1. Does the excessive force charge have to be assigned to a particular person[?]
>
> 2. If we believe that excessive force was used but can't identify an individual, can officers still be charged with failure to intervene?

(Jury Notes, Dkt. # 125, at 4.)

The Court responded as follows:

> In order to find for the Plaintiff on his claim of excessive force you must find that a particular defendant was involved in the particular conduct that you find constitutes an unreasonable use of force as that has been defined for you in the jury instructions.
>
> In order to find for the Plaintiff on his claim of failure to intervene you must find that a particular defendant failed to intervene, as that has been described to you in the jury instructions, to prevent a particular act of excessive force by any police officer. You must agree unanimously on the particular act of force.[3]

Plaintiff objected to the last sentence. Plaintiff asserts, without citation, that "[i]n a situation such as this, where the Plaintiff claimed that multiple officers were simultaneously using excessive force upon him, there is no inherent requirement that the officers' alleged failure to intervene corresponds with a particular use of force." (Pl.'s Mot. New Trial, Dkt. # 127, at 11.)

"An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (citation and internal quotation marks and emphasis omitted). Moreover, as the defendants note, an excessive force claim requires that "a plaintiff . . . identify the specific unreasonable conduct that caused

---

[3] No transcript of this portion of the trial was provided so the Court assumes the Plaintiff's quotation of what was stated to the jury is accurate.

his or her injuries." *Id*. at 770-71. Finally,"[t]hough legally distinct, the fate of plaintiff's failure to intervene claim is closely linked to that of h[is] excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene." *Id*. at 767-68.

The Court did not err in including the final sentence to the failure to intervene supplemental instruction; the evidence in this case required it. The testimony was that numerous officers had different types of contact with Plaintiff in different areas of the residence where he was arrested. Plaintiff claimed he was subjected to excessive force at several distinct moments during his arrest: first, when he was tackled by the officers at the front door of his residence as he tried to enter; second, as he was dragged down the stairs of his front porch as his head/face bounced on the cement steps on the way down to the grass in front of the residence; third, when he received "blows" to his face and body while on the grass; and finally, when he was taken to the middle of the street, made to sit down, and again assaulted by officers who kicked and punched him some more. (Defs.' Resp. Mot. New Trial, Ex. B, Dkt. # 132-2, at 15-27.)

At each of these stages, there were different combinations of officers involved. The evidence was in significant conflict as to whether any of these alleged beatings actually took place, and, if so, precisely how they occurred and who was involved in each. In order for an officer to have had a realistic opportunity to prevent the alleged unconstitutional harm from occurring, as is required in order to find an officer liable for failure to intervene, the jury must have been able to identify and agree on what act constituted excessive force. Otherwise, especially in a case such as this, the jury could have concluded that, generally, Plaintiff was subjected to excessive force at some unidentifiable time during the arrest and therefore officers who were present should have intervened. But in order to satisfy the requirement that an officer

has a realistic opportunity to intervene, the jury had to have been able to identify the harm (*i.e.*, the act or conduct) that the officer could have prevented. Indeed, given the facts of this case, not including the last sentence in the failure to intervene supplemental instruction would have been error. Therefore, this basis for relief is denied.

Admissibility of Mersed Villa's 2003 Conviction

Mersed Villa was present during the arrest at issue and portions of his deposition transcript were read into the record in lieu of his physical testimony. Plaintiff objected to a portion of the deposition in which Villa testified that he plead guilty in 2003 to breaking and entering and served two years' probation. Again, the Court was not provided the relevant portion of the transcript, but according to Plaintiff, he objected to the use of the conviction for impeachment purposes as past the ten-year limit stated in Federal Rule of Evidence 609(b). Plaintiff contends that the Court also erred in allowing the testimony regarding the 2003 conviction because there is no factual nexus between the 2003 conviction and Villa's 2012 aggravated battery conviction. Finally, Plaintiff asserts that the defendants never listed the certified conviction relating to the 2003 conviction as an exhibit and did not present other evidence supporting the fact of the conviction sufficient to use it for impeachment purposes, and Villa's testimony did not provide specific facts and circumstances of the 2003 conviction which demonstrated that the probative value of the conviction substantially outweighed its prejudicial effect.

As to the objections regarding the lack of a factual nexus, the failure to admit a copy of the certified conviction or other facts supporting the fact of conviction, and the absence of facts and circumstances showing the conviction's probative value, Plaintiff does not indicate that he

13

made these objections at the time the testimony was offered, and because no transcript was provided, the Court has no way of knowing whether he did or not. Therefore, these objections are waived, see Fed. R. Evid. 103(a), and Plaintiff has not demonstrated plain error. *See id.* 103(e) ("A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved.").

As to the ten-year limit objection, the lack of a transcript prevents this Court from addressing its basis for having allowed it in evidence. Even assuming that the Court erred in allowing into evidence testimony regarding the 2003 conviction, it was harmless given that the jury already was made aware of Villa's criminal background based on the properly-admitted evidence regarding his 2012 conviction for aggravated battery.

Conclusion

For the reasons stated above, Plaintiff's motion for a new trial is denied.

*Ronald A. Guzmán*

**Date**: July 8, 2015

           **Ronald A. Guzmán**
           **United States District Judge**